At this time, we'll hear Willis v. County of Onondaga. Good morning, Your Honors. My name is Kay Felicia Pitts Davis, and if it pleases the Court, I represent the appellate, Odell Willis. The issues before this Court, as presented, is whether a continuing violation exists. Where a continuing violation exists, should the trial court omit acts which are part of the continuing practice and policy of discrimination in a hostile work environment claim? And is the Farragut-Ellerith defense available to an employer who fails to ensure that the investigation into the appellant's complaints are done unbiasedly, and where the appellant is continually partnered with a co-worker who has perpetrated sexual harassment? In which instance did the employer fail to take measures to correct conditions that came to the employer's attention? Initially, this particular appellant had gone to trial in 2010. And that particular case was the result of a multi-plaintiff case, of which the appellant was the last man standing. And in that case, the jury came back with a verdict that- He was the last man standing because others had settled or because- Others had fallen out. Well, summary judgment had done, I think, over time, various plaintiffs in that case due to attrition. Some had left the department. I think one of them had passed away. Left the department that wouldn't- They didn't have anybody to go forward. These cases were handled by a variety of attorneys. So you had the initial attorney that brought the complaint. In the middle of the case, you had that attorney leave, and they got a second attorney. That second attorney ended up leaving. And so these plaintiffs were left without counsel. And what was the nature of Mr. Willis' claim in that lawsuit? Racial harassment. Well, why isn't there a claim preclusion in this case? Because he's really charging the same thing. Well, because I believe that the acts- These events, as alleged in the complaint, serve a variety of purposes for which those that fall within the timing and then the backdrop of what were the predating events form a continuing violation. And here's what I mean, Your Honor. In the complaint by the appellant, you have the physical touching by Sergeant B. That occurred in 2011. And then you had a subsequent, maybe about seven or eight months later, maybe not that long, maybe about three or four months later, you have another touching by the same supervisor. And then you have an act that occurs maybe about 18 months later. So that's what formed his EEOC complaint. However, prior to the 2011 incident that started this off, the appellant had been sexually harassed by others who were still in the same unit, for which the employer, in attempting to investigate, did nothing for those, and when he brought these complaints, didn't do anything concerning these. So that- Let me ask you about this then, the response then to these. There seem to be responses to most of the complaints of harassment by superior officers. Was there a challenge to the defense, the Farragher-Ellis defense, that the policies were not adequate? Was that raised below, do you know? At the summary judgment stage? Yeah. Yes. In the initial briefs, it was. Part of what was laid out in the original brief for the then plaintiff was the fact that these acts were part of a continuing violation, and so they had rose to the level of being a practice and a custom, and that part of the harassment policy stated that where an investigation is going to be done, the professional standards unit is supposed to do that. In this situation, the professional standards unit didn't do any of the investigations. It was reverted back to the actual unit where all of these events were going on. So the appellant made his initial complaint to the sergeant who harassed him and then went to fellow sergeants to say, this is what happened to me. Those sergeants then said, there's nothing we can do because this person is of equal rank. He went then and spoke to the unit commander who was a lieutenant. That lieutenant only told him, I'm going to keep my eye on this person, but didn't call over to the professional standards unit to say, there needs to be an investigation. I have a point of curiosity. Your client complained about seeing a photograph of a deputy in a shopping cart. Handcuffed to a shopping cart. Handcuffed to a shopping cart. Why would that constitute an act of discrimination or harassment? I just don't understand. Right. And part of it is this. You have these so-called investigations into my client's complaints, which were done by individuals within the unit who attempted to put forward a standard as to what was appropriate behavior and whether or not what happened to my client either just didn't happen at all or should be considered some type of horseplay, which would only violate the rules but really didn't rise to the level of my client's constitutional rights. But then you have going on at the same time the situation where you have a new officer who these same individuals within the unit handcuffed to a shopping cart in an area where only officers could be and there's different layers of testimony in the reports that says that he was forced into the shopping cart and handcuffed. You have others suggest that he got in. Whatever the situation was, Sergeant B's take on this in his deposition was, well, it was no big deal. But it rises to the level of being inappropriate conduct in the unit. I mean, there's no question there's no way to run a railroad, but I don't understand why that would be particularly disturbing to your client or form a basis for some kind of a claim that the police department should act upon for the benefit of your client. Because it goes to... Because your client was not the one photographed. I had the initial impression that your client's face was, like, Photoshopped onto this picture. Oh, no. No, it wasn't. I think it was... I think what part of it is is to be able to set the scene as to what this unit was like. What was the mores of this unit? That it was a unit of lawlessness, that it was a unit with different things with on, and when you were victimized, nothing was done, or it was swept under the rug, or it was so... The unit commanders were so desensitized to what should have been the proper work environment that even sexual harassment and racial discrimination didn't rise to the level of anything. So it goes to support your point that it should have been moved over to the unit... That it should have been investigated outside and that there should have really been corrective action taken, that this particular officer's life was in danger, that while they were doing this you had individuals who were in transport,  whereas situations that they wanted to surveil against my client were made the matter of reports, others were pressed into service against my client to write these bogus statements about my client shadowboxing. All of those things arose to a level where my client, on a daily basis, was under this scrutiny that resulted in reprimands, and then he was directed that he even couldn't make complaints beyond the unit. Thank you. Thank you, Your Honor. We will reserve decision. The case of Fox v. Costco Wholesale Corporation is taken on submission. The case of Lecker v. Priceline Group is taken on submission. The case of Meyer v. Shulkin is taken on submission. The case of Glessing v. the Commissioner of Social Security is taken on submission. That's the last case on calendar. Please adjourn court. Court is standing directly.